IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 CR 595 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| LORENZO COTTON, | ) | |
| Defendant. | ) | |

## LORENZO COTTON'S MOTION TO SUPPRESS

LORENZO COTTON, by the Federal Defender Program and its attorneys,

SERGIO RODRIGUEZ and KIMBERLY SEYMOUR, respectfully submits this motion to

suppress and asks that the Court enter an order precluding the government from

introducing into evidence the firearm seized from the car Mr. Cotton was driving and

further prohibit the admission of any statements made by Mr. Cotton following his

warrantless seizure and arrest. In the alternative, Defendant requests that this Court

order the government to disclose evidence and information regarding the "anonymous

tipster" or "confidential informant" that led to Chicago Police arresting Mr. Cotton

following an investigatory stop. In support of this motion, Mr. Cotton states the following:

### I. Procedural/Factual History

According to the initial discovery received from the government, in March 2017,

an "anonymous citizen" (according to the government, the police claim this person does

not want to be identified due to fear of retaliation) tipped off Chicago Police that an

individual, driving a white Ford minivan with temporary tags in a gang area within the 9th

district, was armed with a handgun. Police then pulled over Lorenzo Cotton, who was

driving a white Ford minivan with temporary tags. Although the officers conveniently

state that one of the reasons for the stop was allegedly for a "minor traffic violation" (obscured plate), the true reason was that Mr. Cotton and the minivan matched the description given by the anonymous tipster.

Upon being stopped, the police asked Mr. Cotton for his Driver's License. Instead of providing his license, Mr. Cotton provided his name and asked the officers to verify his license to drive on their police car computer. Mr. Cotton also provided his insurance information.

The police did not say anything about the anonymous tip; instead, Mr. Cotton submits, they used the failure of Mr. Cotton to provide his Driver's License as a pretext to ask Mr. Cotton and the passengers of the van, Ira Milton and Lorenzo's cousin, Michael Cotton, to exit the vehicle. They frisked the three men outside of the vehicle and told the two passengers that they were being "detained, but not arrested" and proceeded to search the vehicle. During the subsequent warrantless search, Mr. Cotton questioned the legitimacy of the search. The officers stated something to the effect that because Mr. Cotton did not produce a Driver's License when asked, they could detain them and search the vehicle. Later, one of the officers further stated that the fact that the van's license plate was "dirty, and not easily visible from fifteen feet away" was a sufficient enough reason to pull Mr. Cotton over. Using this as their justification, and combined with the failure to produce a Driver's License, they conducted the search of the vehicle. A firearm was recovered near a wallet containing Mr. Cotton's driver's license in the console of the van.

At no point did the police say anything about the tip they had received. Neither the firearm nor the wallet were easily visible from merely opening the center console, as they were only found after digging through to the bottom of the console.

None of the three men admitted to owning the gun. Mr. Cotton claimed that the night before several people had been in and out of his car without him necessarily being around the entire time. The officers took all three to the station for questioning. At the station, Mr. Cotton's cousin, Michael Cotton, eventually told police that the gun belonged to Lorenzo Cotton, only after being told by police that failure to cooperate would lead to major trouble for him including keeping him from his family and away from work. Mr. Cotton was booked by Chicago PD and charged in Cook County Circuit Court. Later, in the fall of 2018, Mr. Cotton's case was moved from state court to federal court and his case was assigned to this Court.

After a February 2019 status hearing in this case, one of defendant's counsel spoke with the prosecution, and was told that the "anonymous tipster" was instead a "confidential informant." The government recently informed counsel that it is now the government's position that it considers the caller an "anonymous tipster." It is Mr. Cotton's position that if this stop is based just on an anonymous tip, the tip was unreliable and did not rise to probable cause for him to be stopped and searched. Therefore, the evidence seized must be suppressed.

If, on the other hand, the stop involved a CI, then much more information on the CI is necessary to determine whether this CI is reliable. This specific information is critical for completing a proper motion to suppress evidence on behalf of Mr. Cotton. If it based on a CI's knowledge, more much more information is needed. Either way, Mr.

3

Cotton is requesting that this Court compel the government to provide to the defense more information on the "tipster" or "CI."

II. **Applicable Law**
    a. **To review the reasonableness of the *Terry* stop, the Court must consider the identity of the informant.**

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend IV. Law enforcement may carry out a *Terry* stop, a brief but lawful seizure, where the officer has reasonable suspicion, grounded in specific and articulable facts, that the subject of the stop has committed a felony or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *United States v. Hensley*, 469 U.S. 221, 229 (1985). The "central inquiry" in determining whether a *Terry* stop is legal focuses on "the reasonableness in all the circumstances of the particular governmental invasion" of a person's "personal security." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

When courts review *Terry* stops based on tips, they must consider the identity of the informant, as the informant's "knowledge and reliability [] affects the reasonableness of police action taken pursuant to the tip." *United States v. Lopez*, 907 F.3d 472, 479 (7th Cir. 2018); *see Florida v. J.L.*, 529 U.S. 266, 271 (2000). Specifically, the identity of the source determines the degree of corroboration required before police deprive a subject of his liberty. "Tips that come from more trustworthy sources will require less independent corroboration than those obtained from more questionable sources," while anonymous tips "require more verification before police may execute a stop and deprive a person of liberty." *Lopez*, 907 F.3d at 480.

b. **For an anonymous tip to be sufficiently reliable for a traffic stop or search, the tipster must have witnessed activity that would cause police to have reasonable suspicion of a crime, and the tipster must have a reliable prediction of the future activity of the subject of the tip.**

Before law enforcement may stop a person based on an anonymous tip, reasonable suspicion typically requires "that [the] tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.,* 529 U.S. at 272. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court emphasized the importance of corroborating an anonymous tip's prediction of future behavior. *Illinois v. Gates*, 462 U.S. 213, 213-14 (1983). "Absent verification of illegal conduct alleged in a tip, police acting on anonymous tips must verify details not easily ascertained by public observation or future actions of third parties ordinarily not easily predicted." *Lopez*, 907 F.3d 472, 480 (quoting *Gates*, 462 U.S. at 245) (internal quotations omitted).

Although the officers in *Gates* did not personally witness any criminal activity, the Supreme Court held that the anonymous tip in question was reliable, because officers could verify several events predicted by the anonymous tip. *Id.* at 214-16. Seven years after *Gates*, the Supreme Court held in *Alabama v. White*, 496 U.S. 325 (1990), that an anonymous tip was sufficiently reliable to provide reasonable suspicion to justify a temporary detention, because the tip accurately predicted several key details. *Alabama v. White*, 496 U.S. 325, 325-27 (1990). Although the Court conceded that White was a "close case", the tip in question "exhibited sufficient indicia of reliability" to justify a temporary detention. *Id.* at 326-27. The Court explained that if "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity. *Id* at 327.

However, in *Florida v. J.L.*, 529 U.S. 266 (2000), the Supreme Court ruled that police officers did not have reasonable suspicion to detain a suspect based on an anonymous tip "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *Florida v. J.L.*, 529 U.S. 266, 266-68 (2000). The Court held that the tip "lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case. *Id* at 267-68. The anonymous call concerning J.L. provided no predictive information, and therefore left the police without means to test the informant's knowledge or credibility. *Id* at 267. The Court declined to create a "firearm exception" for anonymous tips. *Id* at 268.

Furthermore, in *Navarette v. California*, 572 U.S. 393 (2014), police in California received a 911 call that a pickup truck was driving recklessly along a rural highway. *Navarette v. California*, 572 U.S. 393 (2014). Officers spotted a truck matching the description provided in the 911 call and followed the truck for five minutes, but did not observe any suspicious behavior. Nevertheless, officers conducted a traffic stop and discovered 30 pounds (14 kg) of marijuana in the truck. *Id.* At trial, the occupants of the car argued that the traffic stop violated the Fourth Amendment of the United States Constitution, because the tip was unreliable, and officers did not personally observe criminal activity. Writing for a majority of the Court, Justice Clarence Thomas held that the 911 call was reliable, and that officers need not personally observe criminal activity when acting upon information provided by an anonymous 911 call. *Id.* at 394-396. In contrast to *JL*, Justice Thomas noted two main differences: 1) If the police had seen what the 911 caller had seen, the police would have pulled the vehicle over and 2) The

6

911 caller was able to accurately predict where the vehicle in question was heading. *Id.* at 396.

The common element in these cases is that for an anonymous tip to be sufficiently reliable, the tipster must have witnessed activity that would cause the police to have reasonable suspicion that a crime is occurring, and the tipster must be accurate enough to reliably predict future activity of the suspect. The Court found the traffic stop in *Navarette t*o be proper because the tipster witnessed criminal or suspicious activity (reckless driving) and accurately predicted future activity. *Navarette* at 393-394. In contrast, in *Florida v. J.L.*, even though the tipster was correct that the suspect had a weapon, the tipster neither witnessed suspicious activity nor had any prediction of future activity. *J.L.* at 266-268.

**III.** **Since it is unknown whether the CI/tipster in Mr. Cotton's case witnessed a crime taking place or had any accurate predictions about his future activity, the tip is not reliable to justify the detention and search of Mr. Cotton and his vehicle, and the gun should be suppressed.**

The tipster that called the police regarding Mr. Cotton merely told police that a male driving a white van with temporary tags had a gun. Owning a gun is not necessarily illegal and the tipster did not IDENTIFY the alleged gun possessor as a prior felon or report witnessing the targeted individual partaking in any activities that could be reasonably construed as criminal. Moreover, based on the scant information available to the defense, the tipster provided no predictive insight whatsoever towards the targeted individual's future activities. The tipster had no idea where the suspect was going and did not even provide a clue as to where the police could find that person in the immediate future.

7

This case more accurately resembles *Florida v. J.L.* than *Navarette v. California*. There, as here, the tipster did not provide any information predicting what the suspect would be doing or where he would be going in the immediate future. As in *Florida v. J.L.*, the tipster in this case did not witness a crime being committed or witness any activity that would cause the police to pull someone over if witnessed by the police themselves.

Importantly, in *Navarette*, the tipster saw a vehicle driving recklessly, which if seen by the police, would be cause for the police to conduct a traffic stop. *Navarette* at 393. Here, the tipster did not witness anything outwardly that would cause the police to pull someone over; the tipster merely claimed that he knew that the driver of the white van had a gun. The tipster made no allegation that the suspect was actively committing a crime, publicly brandishing the gun, nor using it in any manner while driving.

In *Navarette*, the tipster accurately predicted the direction in which the suspect was headed. *Navarette* at 394. Here, the tipster had no idea where the suspect was headed, and only gave a vague idea of where the suspect was at that present moment.

Because the tipster in this case neither witnessed criminal activity nor had any prediction about where the suspect was headed, the anonymous tip should be considered insufficiently reliable to provide reasonable suspicion to justify a temporary detention for pulling Mr. Cotton over. The obvious pretense of alleging an obstructed plate does not cure the stop. Since the police, therefore, did not have reasonable suspicion sufficient to pull Mr. Cotton over, any information or evidence found in the traffic stop and after should be suppressed, including the gun found in Mr. Cotton's van.

8

IV.    **In the alternative, disclosure of Information Regarding the Tipster/Informant in this Case is Necessary for a Proper Decision**

In the alternative, this Court should order the disclosure of the identity of the "anonymous tipster" "of "confidential informant" because such information is relevant and helpful to Mr. Cotton's defense. *Roviaro v. United States*, 353 U.S. 53 (1957).  Without disclosing such information, the Court cannot determine the level of corroboration required to uphold the *Terry* stop.  For example, in more recent cases such as *Florida v. J.L.*, 529 U.S. 266 (2000), and *Navarette v. California*, 572 U.S. 393 (2014), the Supreme Court established that a "totality of the circumstances test" should be used to determine the reliability of tips given to police in pursuit of a suspect.  *Florida v. J. L.*, 529 U.S. 266 (2000); *Navarette v. California*, 572 U.S. 393 (2014).  Without knowing the identity of the tipster, or even what category of tipster gave information on the suspect to Chicago Police, Mr. Cotton's motion cannot be accurately decided because looking at the "totality of the circumstances" requires knowing how much the tipster knew about the suspect and whether the tipster knew enough about the suspect to accurately predict his future behavior and activities.  *Navarette*, 572 U.S. at 393; *J.L.*, 529 U.S. at 266. Moreover, revealing information about the tipster will allow Mr. Cotton's defense to establish whether the tipster even existed, let alone how much the tipster knew and how close the tipster was to Mr. Cotton.

*Roviaro v. United States*, 353 U.S. 53 (1957), established that the Government has a limited privilege to withhold the identity of individuals who provide information about illicit activity to law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege "must give way" where the informant's identity is either "relevant and

9

helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61. While there is no "fixed rule" governing disclosure, courts are instructed to consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

The confidential informant telling the police that a black male driving a white van illegally possessed a handgun is what led to the police looking for a reason to pull the suspect's van over for an investigatory stop. The identity of the, presumably, sole "anonymous tipster" or "confidential informant" is "relevant and helpful" to the suspect's defense because the individual is uniquely positioned to testify about what he told the police about the suspect, how he knew what he knew about the suspect, and how much he knew about the suspect's activities and plans. Also, two other individuals were present inside Mr. Cotton's van when police stopped him and it remains unclear whether the individual that gave information to police about the suspect was among those who were detained during the search.

The stop was ostensibly for an obscured license plate, but in reality was made on the basis of an anonymous telephone tipster or information by a confidential informant. Mr. Cotton asks this Court to analogize his situation to the requirements and information necessary for the issuance of a legal warrant for search. When the basis for a search warrant is claims made by a CI or tipster, as it was here, the issuing judge would consider the informant's veracity, reliability, and basis of knowledge. *Gates* at 233; *United States v. Bell,* 585 F.3d 1045, 1049 (7th Cir. 2009). Some of the factors to be considered are: (1) the extent to which police corroborated the informant's claims; (2) the degree to which the informant acquired knowledge of the events through first-hand

10

observation; (3) the amount of detail provided; (4) the interval between the date of the events and the police officer's application for the search warrant; and (5) whether the informant personally appeared and testified before the issuing judge. *Bell* 585 F.3d at 1049.

In some cases, informants of unknown reliability *can* establish probable cause, but there should be independent police corroboration too. *Gates* 462 U.S. at 238-42; *Koerth*, 312 F.3d at 867-68. That is the main problem in this case – Mr. Cotton submits that there was insufficient corroboration of the claims of an unknown informant of unknown reliability. We have no information that can shed light on the CI's reliability: his criminal history, any gang affiliation, whether the CI or tipster had given any reliable information in the past, or whether the tipster had sufficient information to reliably predict the suspect's future plans or activities. Without this information, it cannot be proven that the tipster would pass a "totality of the circumstances" test, and passing such a test is necessary to validate the tipster's information enough for the police to be able to rely on it as a legitimate pretext to pulling over Mr. Cotton for an investigatory stop.

The fact that the tipster or CI provided information that turned out to be at least partially true is not enough to lead to the determination that the police in this case had probable cause to stop and search Mr. Cotton's car. The CPD officer's attempts at bootstrapping probable cause for the stop because the license plate was "dirty" or that Mr. Cotton did not immediately produce his Driver's License are also insufficient to justify the subsequent warrantless search.

Clearly, the defense needs to know definitively if the tipster was an "anonymous tipster" or a "confidential informant" to accurately argue his motion to suppress evidence

11

and give Mr. Cotton the complete defense he is entitled to as a matter of law.  If the tip did not come from a "confidential informant" but from a mere "anonymous tipster" then both the tip and the tipster need to be sufficiently reliable for police to conduct an investigatory stop based on it.

## V.     Conclusion

For the reasons outlined above, Mr. Cotton respectfully requests that this Court enter an order finding that Mr. Cotton was subjected to an unlawful investigatory stop. Mr. Cotton further requests that the Court suppress the firearm recovered from the car he was driving and any statements he allegedly made during his detention and arrest.

In the alternative, Mr. Cotton requests that this Court order the disclosure of information regarding the CI/tipster and hold an evidentiary hearing on the matter.  Mr. Cotton also respectfully seeks leave to file additional points of law or memoranda upon receipt of additional information.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/ Sergio Rodriguez*
    Sergio Rodriguez
    One of the Attorneys for Mr. Cotton

SERGIO RODRIGUEZ and KIMBERLY SEYMOUR
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

assisted by:

Timothy Whitehead, Legal Intern
Northwestern Pritzker School of Law

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, <u>Sergio F. Rodriguez</u>, attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## **LORENZO COTTON'S MOTION TO SUPPRESS**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>May 21, 2019</u>, to counsel/parties that are non-ECF filers.

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: <u>*s/ Sergio F. Rodriguez*</u>
    Sergio F. Rodriguez

SERGIO F. RODRIGUEZ
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

14